692 P.2d 35

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Gary Lee JOHNSON,
Defendant-Appellant.**

No. 7486.

Court of Appeals of New Mexico.

Sept. 11, 1984.

Paul Bardacke, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Daniel Rakes, Michael Slosberg, Albuquerque, for defendant-appellant.

## OPINION

NEAL, Judge.

Defendant appeals his conviction of demanding or receiving a bribe and criminal sexual penetration in the third degree. He raises the following issues on appeal:

1. That his constitutional right to be free from self-incrimination was violated because the prosecutor made impermissible remarks concerning his failure to testify at trial;

2. That the trial court's refusal to merge Count I, demanding a bribe, and Count II, extortion with criminal sexual penetration, violated his constitutional right prohibiting double jeopardy; and

3. That the trial judge incorrectly excluded evidence of many prior criminal complaints filed by the complainant which would have been used to impeach her testimony.

Defendant stopped the victim for speeding on November 13, 1982. This was not the first time that defendant and the victim had had an interaction. Two or three weeks earlier defendant had stopped the victim for reckless driving. At that time the victim told the defendant that she would do anything to keep from being arrested. According to Sergeant White, who was present at the earlier stop of the victim by the defendant, the defendant said afterward that he would not mind taking the victim out. The victim repeated this statement on the night in question. According to defendant's statement, the victim was traveling fifty-one miles an hour in a thirty-mile an hour zone.

After the stop, defendant determined that the victim had been drinking. According to the victim, the defendant then said he would not take her to jail if she did him the favor of oral sex. He then followed the victim home. He used her telephone to report that his radio was out of order. The victim testified that the defendant told her to come out to the car, and made her "go down" on him.

Sergeant Sullivan, defendant's immediate supervisor at that time, testified that later that evening, the defendant came into Sambo's Restaurant. Sullivan asked the defendant where he had been. Defendant replied that he was out getting oral sex. Shortly after this remark, defendant said that the victim had propositioned him earlier that night at a car stop.

The victim testified that she stayed drunk for most of the weekend following the incident. On Monday she told a co-worker what had happened. The co-worker's husband is a police officer. She said she was afraid of the defendant and hoped her friend could advise her. The victim was then contacted by a captain on the Carlsbad Police Department. She gave him her story.

## I. Comments on Defendant's Silence.

Defendant asserts a comment by the prosecutor during the state's closing argument constituted a forbidden reference to the accused's post-arrest silence. He also alleges that certain comments made during the argument were impermissible comments on his silence at trial.

The fifth amendment of the constitution made applicable to the states

through the fourteenth amendment, states that an accused is not compelled to testify against himself. The United States Supreme Court held that a prosecutor is not permitted to comment on a defendant's silence. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Any comment for which the prosecutor is directly responsible constitutes fundamental error and requires reversal. *State v. Baca*, 89 N.M. 204, 549 P.2d 282 (1976). Failure to object at trial does not preclude review on appeal. *State v. Ramirez*, 98 N.M. 268, 648 P.2d 307 (1982).

The defendant's first contention has no merit and may be dismissed on factual grounds. Simply, there was no post-arrest silence. The defendant was informed of his right to remain silent at his arrest. He voluntarily made a statement to the investigating officers. The statement was admitted into evidence without objection. The prosecutor, in his closing argument, attacked various inconsistencies between the defendant's statement and other testimony heard at the trial. He noted that while the defendant called the dispatcher from the victim's house at 12:32 a.m., and claimed to have left her home about one and one-half minutes after the call, he did not arrive at his stop until fourteen minutes later, when the victim's house was only about three minutes away. He said:

> Where are the other eight minutes? They are not there because he did not tell the police what happened after he left the house. He did not tell them about getting fellatio from [the victim]. That's where the other time is. That's why you know what happened. That's why we put this statement into evidence.

No objection was made to the comment at trial.

Taken in context it is clear that the prosecutor was remarking on the statement made to the police. At his arrest the defendant waived his right to remain silent and made an exculpatory statement. Therefore, there was no post-arrest silence to which the comment could have made reference.

As stated above, a prosecutor's comment on the defendant's exercise of his fifth amendment right to remain silent may constitute error requiring reversal. *State v. Ramirez*. However, the rule has no application where, as here, the defendant did not remain silent, and after receiving *Miranda* warnings, gave a statement. *State v. Olguin*, 88 N.M. 511, 542 P.2d 1201 (Ct.App.1975). The fact that a defendant omits details in his statement is certainly not the kind of silence which is constitutionally protected as the defendant does not remain silent with respect to the subject matter of his statement. *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). Even when a defendant gives a statement but refuses to answer specific questions, the answers provide a context which lends probative value to the silent responses; comment on those silent responses is not prohibited. *United States v. Goldman*, 563 F.2d 501 (1st Cir. 1977), *cert. denied*, 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 768 (1978). Therefore, the prosecutor's comment on the defendant's statement is not error.

The defendant argues that the following statement in the closing argument was a direct comment on the defendant's failure to testify at trial.

> And that's what he did in his statement. He just left out what happened after the telephone call and added in a little bit of his own. But you can see by the times and the distances that more happened than the defendant was willing to tell you that; and the reason he wasn't willing to tell you what happened is he cannot tell you he received a sexual favor without admitting to everything.

The defense moved for a mistrial on the grounds that the statement concerned the defendant's failure to testify. The state argued that the statement was directed to the defendant's statement rather than his failure to testify. The court withheld a ruling at the time and never did announce a ruling on the motion.

Again, it is clear from the remark itself and the context in which it was made that the prosecutor was referring to the defendant's statement. The quoted language begins with a reference to the statement, and the emphasized language again refers to the defendant's lack of explanation for a period of time during which the incident in question was said to have occurred.

■ The state may question the plausibility of an exculpatory statement. *State v. Olguin.* The jury, having listened to many minutes of argument addressed to the statement, would have understood the quoted remark in that context. The comment therefore was not directed at the defendant's refusal to testify and it was not error to refuse to direct a mistrial.

■ The next comment by the prosecutor which defendant argues was an improper comment on his exercise of his right not to testify occurred in the state's rebuttal argument. The defense had argued at length in closing argument that a policeman's life is difficult and dangerous. The prosecutor responded by accusing the defense of making an appeal to the sympathy and prejudice of the jury. He said, "they want to pull the shield of all good officers around this defendant." He then made the remark [complained of]: "You heard no testimony about this defendant's record as a police officer, whether he faced one killer or no killers, whether he did anything."

The defense objected. The court ruled that the statement was not a comment on the defendant's failure to testify. The context of the remark makes clear that the court was correct.

Defendant's closing argument stressed the dangers faced by police officers in the line of duty. The prosecutor responded that no testimony had been heard regarding the defendant's police career. Such testimony could have been supplied by means other than the defendant's own testimony. Therefore, the statement could not reasonably be perceived as a comment on the defendant's failure to take the stand.

■ The final statement complained of is: "He never said one word about why the victim didn't get arrested for that because its just no reason other than the officer received this favor."

Defendant did not object to the comment but argues that this statement combined with the others constitute fundamental error. The context of the comment again indicates that it refers to the defendant's exculpatory statement to the police. The prosecutor referred to the statement that the victim was driving well above the speed limit and was ".15", referring to an estimated level of alcohol in the blood sufficient to arrest, and contrasted that with his failure to arrest her or offer an explanation why he did not arrest her. The quoted statement was not directed at the defendant's silence at trial. Therefore none of the comments complained of were improper.

## II.  Merger.

The defendant contends that he suffered double jeopardy because the trial court refused to merge Count I, which charged him with demanding a bribe by a public officer, and Count III, criminal sexual penetration. He also argues that Count I is a lesser included offense within Count III, and therefore the state should only have been allowed to proceed under Count III.

■ Merger is an aspect of double jeopardy; the concept is applied to prevent a person from being punished twice for the same offense. *State v. Sandoval,* 90 N.M. 260, 561 P.2d 1353 (Ct.App.), *cert. denied,* 90 N.M. 637, 567 P.2d 486 (1977). The test of whether one criminal offense has merged with another is whether one offense necessarily involves the other. *Id.* at 263, 561 P.2d at 1356. That determination requires an examination of the statutory definitions of the crimes to see whether the elements are the same. *Id.* The crime of demanding or receiving a bribe by a public officer or public employee "consists of any public officer or public employee soliciting or accepting, directly or indirectly, any-

thing of value, with intent to have his decision or action on any question, matter, cause, proceeding or appointment influenced thereby, and which by law is pending or might be brought before him in his official capacity." NMSA 1978, § 30-24⊭2 (Repl.Pamp.1984). Criminal sexual penetration in the third degree "consists of all criminal sexual penetration perpetrated through the use of force or coercion." NMSA 1978, § 30-9-11(C) (Repl.Pamp. 1984).

▇▇▇▇ Demanding a bribe does not require proof that a bribe was actually received, so the state was not required to show that the defendant received fellatio for the crime to be complete. Criminal sexual penetration, in contrast, requires that the act was actually committed. Count I also involves the intent of the defendant that his decision be influenced by the bribe. Count III requires that the victim believed that the defendant would arrest her unless she submitted, thus constituting the requisite "force or coercion." Therefore, the defendant did not face multiple prosecutions for the same offense and the court did not err in refusing to merge the two counts. The same comparison of the offenses required to determine whether one count is a lesser included offense of another under *State v. Medina*, 87 N.M. 394, 534 P.2d 486 (Ct.App.1975), yields the same result.

### III. Exclusion of Evidence of Prior Complaints.

The defendant presents difficult questions under the Rape Shield Law implicating the opposing principles of the protection of victims of sexual crimes on one hand, and the right of the criminal defendant to cross-examine the witnesses against him on the other. Defendant sought to cross-examine the complainant concerning several other complaints she had made to the police in the three years prior to the incident in question. First he argues that the court erred in limiting his offer of proof concerning the complaints, and he then argues that the court erred in refusing to allow cross-examination at trial about the prior accusations, including prior accusations of rape.

The procedural history of the case is complex. Prior to trial the court held a hearing on the state's motion in limine. The state sought to prevent the defense from inquiring into the past sexual conduct of the complainant based on the Rape Shield Law, NMSA 1978 Section 30-9-16 (Repl.Pamp.1984), and NMSA 1978 Evid. Rule 413 (Repl.Pamp.1983). The court granted the state's motion. Then, at trial, the defense sought to cross-examine the victim about the prior complaints, contending the testimony would be admissible under NMSA 1978, Evid.Rule 404(b) and 608 (Repl.Pamp.1983). The defense made an offer of proof; the court refused to allow the defense to cross-examine the complainant outside the presence of the jury, but allowed counsel to read into the record the questions he would have asked the complainant concerning the prior complaints. The defense objected. The defendant argues that the court improperly prohibited him from cross-examining the complainant regarding her prior complaints. For the purpose of analysis we will divide the complaints into two groups, those concerning rape and sexual assault, and those dealing with other allegations. We then discuss the tender issue.

### A. Prior Complaints Regarding Sexual Conduct.

At the motion hearing on September 13, 1983, the defense sought to cross-examine the victim with questions concerning three prior assault and rape complaints, arguing that evidence of the complaints showed the victim's tendency to "cry wolf." The court ruled that the complaints involved evidence of prior sexual conduct of the complainant and would not be allowed. Then, on his tender he listed questions concerning rape complaints against six named individuals and one unknown individual. He argues that the testimony sought did not involve prior sexual conduct under the Rape Shield Law and was therefore erroneously exclud-

ed. In the alternative, he contends that if the rapes were prior sexual conduct within the meaning of the statute, they were admissible under the balancing test set out in the Rape Shield Law.

As a preliminary matter note that only three of the prior rape complaints were inquired into at the motion in limine hearing. Failure to seek an in-camera hearing on the issue of the admissibility of evidence of prior sexual conduct bars introduction of the material. *State v. Montoya*, 91 N.M. 752, 580 P.2d 973 (Ct.App.), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). Therefore, the issue regarding prior rape complaints beyond the three raised before trial cannot be raised on appeal.

The admissability of evidence of a complainant's past sexual conduct is governed by Evid.Rule 413(a). That section provides:

(a) **Evidence of the victim's past sexual conduct.** In prosecutions under Sections 30–9–11 to 30–9–15 NMSA 1978, evidence of the victim's past sexual conduct, opinion evidence thereof or of reputation for past sexual conduct, shall not be admitted unless, and only to the extent that the court finds, that evidence of the victim's past sexual conduct is material and relevant to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Section 30–9–16 provides that it is a matter of substantive right that such testimony not be admitted except on the same limited conditions set out in the evidence rule.

The statute is intended to encourage the reporting of rapes by lessening the ordeal a rape victim must endure at trial, and making the prosecution of rape cases more equitable for the victim. It minimizes the intrusive inquiry into the complaining witness' private life, recognizing that prior sexual conduct is rarely relevant to the guilt or innocence of the accused. *State v. Romero*, 94 N.M. 22, 606 P.2d 1116 (Ct. App.1980). It also insulates the jury from prejudicial evidence. *Id.* In doing so it "severely limits the opportunity of a defendant charged with certain sexual offenses to impeach the prosecutrix' testimo-

ny by presenting evidence as to her prior sexual behavior." *Id.* at 25, 606 P.2d 1119.

The danger posed by the statute and evidence rule is that its application will prevent the defendant from adequately cross-examining the complainant to attack her credibility, thus violating the defendant's right to confront the witnesses against him guaranteed by the sixth and fourteenth amendments. *Hughes v. Raines*, 641 F.2d 790 (9th Cir.1981), citing *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347.

The contention that prior rape complaints do not involve prior sexual conduct is easily disposed of: the court has determined that the wording of the statute is not limited to sex by consent, rather, its unlimited wording applies to all sexual conduct so that a prior rape is sexual conduct within the meaning of the section. *State v. Montoya.* Therefore, the prior rape complaints concern past sexual conduct and implicate the statute.

Evidence of prior sexual conduct may be admitted, however, if it is relevant and material, and its prejudicial nature does not outweigh its probative value. Therefore we must first examine the relevancy and materiality of the prior complaints.

In his brief-in-chief, defendant cites dicta in the case of *State ex rel. Pope v. Superior Court*, 113 Ariz. 22, 545 P.2d 946 (1976) as authority to the proposition that prior unsubstantiated charges of rape have been found admissible in some jurisdictions as bearing on the credibility of the victim. Other courts have directly considered the question and reached a different result.

In *Little v. State*, 413 N.E.2d 639, 643 (Ind.App.1980), the court stated, "[w]e believe that evidence of false accusations of similar sexual misconduct is admissible on the issue of the victim's credibility. The allegations, however, must be demonstrably false." The court quoted with approval the statement in *State v. Nab*, 245 Or. 454, 459, 421 P.2d 388, 391 (1966) that, " '[t]he

rule is limited to the reception of evidence that the prosecutrix had admitted the falsity of the charges or they had been disproved.'" Other courts have applied similar standards.

In *State v. Demos*, 94 Wash.2d 733, 619 P.2d 968 (1980), the defense sought to introduce two rape complaints which occurred thirteen months prior to the incident in question. The evidence showed the complainant had previously reported two rapes. The first took place in Seattle, and the case was placed on inactive status when she moved to Oregon and the Seattle police could not locate her. In Oregon she reported a rape and took a polygraph test which showed consistent deception. The charges were dropped. The court did not reach the question of whether the Rape Shield Law prohibited evidence of past rape accusations because the offered evidence did not prove falsity and was therefore irrelevant. As it had no tendency to prove anything in dispute and would have been highly prejudicial, it was excluded.

In *Hughes*, the court was faced with a similar situation. (Citing the wide discretion of the trial judge with respect to limiting the scope of cross-examination.) The court discussed the trial court's exclusion of prior rape complaints. The court weighed the probative value and found that the only probative value would be if "it could be shown convincingly that the other charge was false." The court then recited the evidence shown by the defendant's offer of proof that the district attorney did not prosecute the complaint and the accused denied he committed the act. Even if the jury believed the complaint to be false, the probative value was slight, the court reasoned, citing the factual dissimilarity between the two complaints. The same reasoning regarding the similarity of prior complaints to the incident in question was employed by the New Mexico Supreme Court when ruling on the relevance of prior complaints in *State v. Fish*, 101 N.M. 329, 681 P.2d 1106 (1984).

■ We agree with the reasoning of the *Hughes*, *Little* and *Demos* cases, and apply the standard that to pass the initial relevancy test of Rule 413 and Section 30–9–16, the prior complaints must be demonstrably false. To allow evidence of unsubstantiated rape complaints would divert the attention of the trial from its primary objective, determination of the guilt or innocence of the accused. *Little*. Instead, the focus would be on whether the prior charges were "unsubstantiated," in effect putting the complainant on trial as to the truthfulness of any complaint to the police which did not result in arrest or conviction. Such inquiry violates the intent of the Rape Shield Law.

■ Here there is no evidence that the complaints were false. In fact one complaint resulted in a prosecution and a guilty plea to a lesser assault charge. The defendant neither sought to depose the complaining witness nor to independently develop evidence of falsity. Defense counsel even admitted he did not know whether the prior complaints were true or false. The complaints, without convincing evidence of falsity, have no relevance. Here the court heard not only the victim's testimony concerning the incident, but corroborating testimony by the defendant's fellow police officers who stated that the defendant said he had been propositioned by the victim and had been getting oral sex. The court properly excluded evidence that the victim had made prior rape complaints to the police.

**B. Prior complaints unrelated to sexual conduct.**

The defense argued that the questioning regarding prior complaints to the police about incidents not involving rape was admissible under NMSA Evid.Rule 608(b) as probative of untruthfulness and lack of veracity, and under NMSA Evid.Rule 404(b) as bearing on motive, habit, or intent of the witness. He argues that "the fact that the complaining witness had made some two dozen false complaints in the past would have been probative of untruthfulness and lack of veracity," and could show whether she was a chronic complain-

er who fabricates and imagines things. At the motion in limine hearing defense counsel admitted he did not know whether the complaints were true or false.

The extent of cross-examination is a matter within the discretion of the trial judge, and its rulings will not be disturbed absent a clear abuse of that discretion. *State v. Ewing*, 97 N.M. 235, 638 P.2d 1080 (1982). The same is true regarding admission of evidence pursuant to Rule 404(b). *State v. Smith*, 92 N.M. 533, 591 P.2d 664 (1979); *State v. Allen*, 91 N.M. 759, 581 P.2d 22 (Ct.App.), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). Of course, evidence sought to be admitted under that rule is subject to the balancing test of NMSA Evid.Rule 403 (Repl.Pamp.1983), which requires that the probative value of the evidence outweigh its prejudicial effect. *State v. Beachum*, 96 N.M. 566, 632 P.2d 1204 (Ct.App.1981).

We first examine the probative value of the prior complaints because, until relevancy has been demonstrated, the balancing test does not come into play. *State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (Ct. App.1978). In other jurisdictions it has been held that the fact a person makes accusations does not establish that they are false, even if they do not result in arrests or convictions. *Stewart v. State*, 174 Ind. App. 447, 368 N.E.2d 253 (1977); *see Durkin v. State*, 284 Md. 445, 397 A.2d 600 (1979).

As stated in the previous section, the defendant offered no proof that the accusations were false, and given the other evidence concerning her drug and alcohol use and association with drug dealers, the number of complaints could indicate that her circumstances might likely include contact with criminal behavior. Therefore, the fact that the complainant made the prior complaints has no probative value. The prejudicial effect, however, could be great. With no supporting evidence offered to show that the reports were false, the defense is asking the jury to infer that she lied to the police in the past. The New Mexico Supreme Court stated, "The im-

peachment of a witness by insinuations . . . of prior misconduct provides the trier of fact with no information relevant to the witness's credibility and carries a great potential for prejudice." *State v. Robinson*, 99 N.M. 674, 676, 662 P.2d 1341 (1983).

The analysis under Evid.Rule 608 yields the same result. The rule provides that specific instances of conduct may be inquired of on cross-examination if, in the discretion of the court, probative of untruthfulness. *State v. Madrid*, 83 N.M. 603, 495 P.2d 383 (Ct.App.1972). As previously discussed, the probative value of the fact that the victim made prior complaints is non-existent, while we have already held that its prejudicial effect is great. *State v. Romero*, 94 N.M. at 26, 606 P.2d 1116. There was no abuse of discretion in refusing to allow the defense to cross-examine the complainant regarding prior complaints in order to impeach her credibility.

### C. Offer of Proof.

Defendant contends that the court erred in refusing to allow him to question the complaining witness during his offer of proof. The purpose of an offer of proof is to advise the court of the nature of the evidence sought to be admitted. NMSA 1978, Evid.Rule 103(a)(2) (Repl. Pamp.1983); *State v. Shaw*, 90 N.M. 540, 565 P.2d 1057 (Ct.App.1977). We believe the defendant's proffer was sufficient to accomplish that result. The court allowed defense counsel to read into the record the questions he wanted to ask the victim. The questions concerned whether she had made the prior complaints listed on a police printout. None of the questions dealt with the truth or falsity of the complaints. No evidence of falsity was presented. As we have already discussed, the mere fact that the complaints were made, assuming the victim admitted she had made the accusations, has no probative value. Given the balancing test of Evid.Rule 403, the court did not impermissibly limit the defendant's offer of proof, rather, the offer was limited by the defendant, who did not seek to prove that the complaints were false.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

DONNELLY, C.J., concurs.

HENDLEY, J., concurs in result only.